RONALD CRUZ, State Bar No. 267038
SHANTA DRIVER, Michigan Bar No. P65007*
United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
1985 Linden Street
Oakland, CA 94607
(510) 875-4463 Fax: (313) 586-0089
ronald.cruz@ueaa.net, shanta.driver@ueaa.net
Attorneys for Plaintiffs/Petitioners
*_Pro hac vice_ application pending

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

YVETTE FELARCA, LORI NIXON, LARRY STEFL,

Plaintiffs/Petitioners,

vs.

BERKELEY UNIFIED SCHOOL DISTRICT, DONALD EVANS, JANET LEVENSON,

Defendants/Respondents.

_____

JUDICIAL WATCH,

Real Party in Interest.

_____

CASE NO.:

**VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE**

- **California Public Records Act (Cal. Gov't Code §§ 6250 _et seq._)**
- **First Amendment to U.S. Constitution (Freedom of Speech, Freedom of Association)**
- **Fourth Amendment to U.S. Constitution (Privacy)**
- **California Constitution Article 1, §§ 1-2**
- **California Code of Civil Procedure §§ 382, 1085, 1086**
- **Educational Employment Relations Act (EERA) (Cal. Gov't Code §§ 3540 _et seq._)**
- **California Labor Code §§ 1101, 1102**

**CLASS ACTION**

**INTRODUCTION**

1.      This Verified Complaint and Petition is brought by teacher Yvette Felarca, staff member Lori Nixon, and teacher Larry Stefl who work at Martin Luther King Middle School ("MLKMS") in Berkeley Unified School District ("BUSD"), to enjoin Defendants BUSD, BUSD Superintendent Donald Evans, and MLKMS Principal Janet Levenson from (1) directing MLKMS staff and faculty to surrender all communications, including electronic (e-mail) communications, that state the words "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN," to BUSD, (2) mining email accounts of MLKMS staff and faculty for such documents and/or provide such documents to Real Party in Interest Judicial Watch, and (3) giving Felarca's confidential personnel file to Judicial Watch.

2.      Plaintiffs Felarca, Nixon and Stefl seek class-representative status to represent all teachers and staff at MLKMS.

3.      Immediate action is necessary because Defendants have ordered Plaintiffs to produce these e-mails by November 2, 2017 to give them to Judicial Watch. For Plaintiffs who do not respond, Defendants will mine their emails for communications that meet the stated criteria and release them to Judicial Watch (EXHIBIT 1 - Levenson email).

4.      Judicial Watch and BUSD seek to put on public display the emails of teachers and staff at MLKMS, a school community that has been defending Felarca and the city of Berkeley from right-wing attack. Defendant seeks to conduct a political witch-hunt, violating Plaintiffs' privacy and chill their freedom of speech, freedom of association, and right to engage in protected activities and disrupts their public function as educators.

5.      Berkeley has found itself at ground zero in the fight against Donald Trump's policies of anti-immigrant scapegoating and tendency toward creating an authoritarian

1  regime. The people of Berkeley, including Plaintiffs, have been at the center of opposing

2  the alt-right and neo-Nazi thugs who have repeatedly targeted Berkeley precisely because

3  of its principles of anti-racism, tolerance and freedom of speech. This case will have

4  tremendous impact on the future course of this struggle.

5  6.    Berkeley's leading role in the anti-Trump movement has also meant that Felarca,

6  a national organizer with the Coalition to Defend Affirmative Action, Integration and

7  Immigrant Rights and Fight for Equality By Any Means Necessary (BAMN) who has

8  organized protests and done countless media interviews, has quickly gained a broad

9  audience and recognition.

10  7.    BUSD has been conducting a political witch-hunt against Felarca, including

11  attempting to remove her from her job in Fall 2016 on baseless, politically-motivated

12  charges.

13  8.    BUSD's action violates the central constitutional protections that are held most

14  dear by this community and which have taken on new, deeper, and more intimate

15  meaning given the history we are living through. Injunctive relief for Plaintiffs would

16  make clear that the protections of Privacy, Freedom of Speech, Association, and Political

17  Freedom—the underpinnings of democracy—are not mere phrases but living ideals to

18  which this Court, California, and the United States subscribes.

19  9.    BUSD's action has caused alarm and fear among Plaintiffs and other teachers and

20  staff at MLKMS: they are fearful of speaking out or expressing opinions on political or

21  social issues, in or out of school, for fear of being "next." (See attached Declarations of

22  Plaintiffs Felarca, Nixon, and Stefl and Declarations 5, 6, and 7.) The atmosphere of fear

23  and the awareness that communications can be handed over to hostile political

24

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
CASE NO.                                                          3

organizations disrupts the school's educational mission by sowing fear and division among teachers and staff, some of whom are fearful of communicating with Felarca in the course of their duties due to BUSD's actions, and fearful of speaking and associating in ways that will be met with political witch-hunt and attack. No amount of redacting names, email addresses, etc. would protect individual Plaintiffs from the right-wing trolls who have been determined to identify MLKMS teachers and staff for harassment and bullying as well as the entire school.

10.     BUSD's action sets a dangerous precedent. Employers are barred from asking employees about and/or make public their political affiliations, such as whether they are Democrats or Republicans, where they stand on ballot propositions, or whether they are members of the ACLU, BAMN, Operation Rescue, or any other political organization. Allowing public employers to ask employees to provide and then publicize that kind of information chills and deters employees' freedom of speech and association for fear of employer surveillance or public exposure, allows public employers to pick and choose which employees to retain or drive out based on their political beliefs, and exposes employees to political witch-hunt and harassment for their beliefs.

11.     BUSD's pursuit of Judicial Watch's illegal CPRA request would transform the CPRA into something unrecognizable and far-removed from its original intent of making the acts of government officials public. Instead, it would become a tool for employers and political organizations to spy on and police public employees for their political beliefs and affiliations, including concerted activities for their mutual benefit.

12.     To defend their fundamental rights of freedom of speech, freedom of association, privacy, and union right to organize, Plaintiffs seek relief.

**THE PARTIES**

13.    Plaintiff/Petitioner Yvette Felarca is an individual who is employed in Berkeley, California. Felarca is a teacher and employee at Martin Luther King Middle School ("MLKMS") in Berkeley Unified School District (BUSD). She is a nationally-prominent leader in the Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary (BAMN). She has served as MLKMS' elected site representative and is a member of the Berkeley Federation of Teachers' (BFT's) executive board.

14.    Plaintiff/Petitioner Lori Nixon is an individual who is employed in Berkeley, California. Nixon is an employee at MLKMS in BUSD.

15.    Plaintiff/Petitioner Larry Stefl is an individual who is employed in Berkeley, California. Nixon is a staff member and employee at MLKMS in BUSD.

16.    Defendant/Respondent Berkeley Unified School District ("BUSD") is in Berkeley, California. It is a public entity and an educational service agency established and maintained by the laws and constitution of the State of California.

17.    Defendant/Respondent Donald Evans is the superintendent of BUSD. His place of employment is in Berkeley, California. He is sued in his official capacity.

18.    Defendant/Respondent Janet Levenson is the principal of MLKMS. Her place of employment is in Berkeley, California. She is sued in her official capacity.

19.    Real Party in Interest Judicial Watch is a conservative organization located in Washington, DC. Judicial Watch invoked the California Public Records Act ("CPRA") when requesting that BUSD produce all BUSD administration and MLKMS faculty and staff communications that mention "Felarca," "Antifa," "By All Means Necessary," and "BAMN," and when requesting Felarca's confidential personnel file.

**JURISDICTION AND VENUE**

20.     Just as the federal courts have recognized the implied right of individuals whose rights would be violated by a federal government agency's release of records pursuant to a Freedom of Information Act (FOIA) request to initiate a "reverse-FOIA request" against the agency to request injunctive relief to protect their rights, the California courts have recognized the right of individuals whose rights would be violated by a California government agency's release of records pursuant to CPRA request to initiate a "reverse-CPRA lawsuit" to request injunctive relief to protect their rights. *Marken v. Santa Monica-Malibu Unified School Dist.,* 202 Cal.App.4th 1250, 1265 (Ct. App. 2012).

21.     This action is brought pursuant to: 42 U.S.C. §1983; the First and Fourth Amendments to the United States Constitution; the California Constitution; the California Public Records Act (Cal. Gov't Code §§6250 *et seq.*); and the California Educational Employment Relations Act (EERA, Cal. Gov't Code §§3540 *et seq.*.

22.     Plaintiffs are employed in Berkeley, California. All the Defendants are employed and/or are in Berkeley, California. The events, acts, and/or omissions complained of herein occurred in Berkeley, California, and this action is properly assigned to the U.S. District Court of California, Northern District.

23.     This Court has subject matter jurisdiction under 28 USC §1331 and 28 USC §1343(3). This Court has supplemental jurisdiction of related state claims from the same case or controversy under 28 USC §1367(a).

24.     This action is timely filed within all applicable statutes of limitation.

## INTRADISTRICT ASSIGNMENT

25.     A substantial part of the events which give rise to this claim occurred in Alameda County, making assignment to the Oakland Division appropriate under Civil L.R. 3-2(d).

**GENERAL FACTUAL ALLEGATIONS**

26.     To qualify as a public record that must be disclosed under the California Public Record Act ("CPRA"), a writing must "contain [] information relating to the conduct of the public's business." Cal. Gov't Code §6252(e). The California Supreme Court expands on this definition: "[T]o qualify as a public record under CPRA, at a minimum, a writing must relate in some substantive way to the conduct of the public's business. This standard, though broad, is not so elastic as to include every piece of information the public may find interesting. Communications that are primarily personal, containing no more than incidental mentions of agency business, generally will not constitute public records." *City of San Jose v. Superior Court,* 2 Cal.5th 608, 618 (Cal. 2017).

27.     Further, the CPRA does not authorize the disclosure of records, "the disclosure of which is exempted or prohibited pursuant to federal or state law." Cal. Gov't Code §6254(k). Disclosure may not violate constitutional and statutory rights to privacy, freedom of speech, freedom of association, and to engage in protected activities.

28.     The CPRA exempts "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy" from disclosure. §6254(c).

29.     Felarca is not a public official. She and the other Plaintiffs are teachers and staff who have no decision-making power in the District. Ms. Felarca, who is targeted in the request, has no power to set policy for the Berkeley Unified School District (BUSD).

30.     Felarca is a teacher of English Language Learners (ELL) at MLKMS, which is the only middle school in Berkeley with a Newcomers program for recent immigrant students. Felarca is a member of the civil rights and immigrant rights organization, the

1   Coalition to Defend Affirmative Action, Integration, and Immigrant Rights and Fight for

2   Equality By Any Means Necessary (BAMN) and is affiliated with the National Teachers

3   Caucus EON/BAMN (Equal Opportunity Now/By Any Means Necessary), in which

4   members are aware and expectant of the outcome of this request (See Declaration of

5   Mark Airgood). As a national organizer with BAMN, Felarca has organized and led

6   protests opposing Trump's policies scapegoating immigrants, Muslims, and against

7   Trump's alt-right and neo-Nazi supporters.

8   31.    Since Donald Trump was elected, the City of Berkeley, the UC-Berkeley campus,

9   and the city's public school system have lived up to their progressive reputation and

10  consistently warded off threats and attacks by alt-right and immigrant-bashing

11  demagogues. Berkeley's leading role in the anti-Trump movement has also meant that

12  Felarca has quickly gained a broad audience and recognition. Her numerous speeches and

13  interviews on local, national, and international media outlets as an organizer and leader of

14  BAMN have garnered international attention from Trump opponents and supporters. Her

15  political views are most closely aligned with the immigrant rights and Black Lives Matter

16  movements.

17  32.    In her role as a BAMN leader and leading civil rights activist in California and the

18  nation, Felarca has become a favorite target for the alt-right and Trump supporters. Her

19  organizing against neo-fascist and alt right marches in Berkeley, as well as her stand

20  against the Trump policies of increased ICE raids and arrests, have made her a target of

21  far-right Internet trolls. Her well-publicized fight to keep her job in Berkeley Unified

22  Schools and to recoup pay that District Administration withdrew from her bank account

23  was supported by the Berkeley Federation of Teachers (BFT) through the Grievance

24

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
CASE NO.                                                                8

1   process. The case was resolved in Felarca's favor after investigation by District

2   Administration.

3   33.    Felarca has been a union representative for MLK and has run for the Berkeley

4   Federation of Teachers (BFT) Presidency on several occasions. She has repeatedly been

5   elected as a BFT delegate to the American Federation of Teachers (AFT) National

6   Convention and has been elected to represent BFT at the California Federation of

7   Teachers (CFT) State Conference. She has represented numerous teachers in grievance

8   procedures, and has been a vocal advocate of public education at and against the

9   expansion of charter schools in Berkeley at the BUSD Board of Education meetings.

10  34.    For over a year, teachers and staff at the school have heroically united against the

11  abuse that Ms. Felarca and the rest of the staff have suffered at the hands of alt-right, neo-

12  fascist, and violent Trump supporters.

13  35.    In the summer of 2016, Ms. Felarca spoke to CNN and other media about

14  protesting and being stabbed by neo-Nazis in Sacramento. Within hours, a troll campaign

15  attempted to use cyber terrorism to terrorize Ms. Felarca, teachers, staff, and students at

16  the school. Despite this, teachers and staff stood strong and united together, refusing to be

17  cowed.

18  36.    A few weeks later in September 2016, the District resurrected the witch-hunt by

19  taking action against Felarca, removing her from her classroom for weeks. Again, the

20  King teachers, staff, and community became even more active, speaking out at rallies,

21  school board and community meetings to successfully restore Ms. Felarca to her

22  classroom. (See attached Declarations)

23

24

37.     In February 2017, after Felarca appeared on Fox News to debate host Tucker Carlson on the alt-right and fascism, insane trolls again bombarded Felarca and the school with death threats via email and phone calls.

38.     As Plaintiff Stefl writes in his Declaration: "Last spring [2017], myself, other staff members, and our staff as a whole were terrorized with death threats, stalked at work in the community by those who politically targeted our school and staff. Our staff received counseling and individuals were forced to take time off from work as a result of the immediate trauma these vile threats and harassment created." (Declaration of Larry Stefl)

39.     The right-wing trolls' goal was to enlist support from other staff and administration to turn on Ms. Felarca and force her abandon her students and the school community. Again, King teachers and staff showed integrity and unity, overcoming that divisive period, and healing on the side of each other, free speech, and anti-racist activism.

40.     Through repeated witch-hunts by crazy right-wing trolls and by the District administration, the teachers, staff, and school community have ultimately stuck together, supporting not only one of their most politically active and outspoken teachers, but their own right to speak out against Trump's racist scapegoating and on behalf of immigrants, Muslim, black, and other students facing hardship. (Declaration of Larry Stefl)

41.     On September 1, 2017, the Washington, D.C.-based conservative organization and Real Party in Interest, Judicial Watch, sent a request to Defendant BUSD requesting that it produce for public inspection "1) Any and all records of communications between the BUSD Superintendent and any other BUSD officials and/or staff of Martin Luther Kind, Jr. [sic] Middle School mentioning 'Felarca', 'Antifa', 'By All Means Necessary',

and/or 'BAMN.' 2) Any and all records of communications between and among

faculty/staff members of Martin Luther King, Jr. Middle School mentioning "Felarca

among faculty/staff members of Martin Luther King, Jr. Middle School mentioning

'Felarca,' 'Antifa,' 'By All Means Necessary,' and/or 'BAMN.' 3) The personnel file of

Martin Luther King, Jr. Middle School teacher Yvette Felarca." The request claimed

authority for this request under the California Public Records Act ("CPRA").

42.     Judicial Watch is a right-wing, an anti-immigrant organization with a history of

attacking Sanctuary city policies, and are now targeting the school and teachers who

teach and publicly defend immigrant students inside and outside the school. Judicial

Watch has held weekly meetings in its Washington, D.C. offices over the past year with

Breitbart News and other conservative, Pro-Trump, and Alt-Right politicians and

reporters to coordinate messaging and plan a campaign (named "Groundswell") to

promote and publicize these political views.

43.     On October 25, 2017, Defendant MLKMS Principal Janet Levenson sent an e-

mail out to all MLKMS teachers and staff directing them to produce all emails that

mention "Felarca," "Antifa," "By All Means Necessary" , and/or "BAMN" to BUSD so

that they would be given to Judicial Watch. If teachers and staff did not do so by

November 2, 2017, BUSD personnel would mine their emails and obtain all emails fitting

this criterion and give them to Judicial Watch. (See EXHIBIT 1 – Levenson email)

44.     At an October 25, 2017 staff meeting, Defendants Superintendent Evans and

Principal Levenson announced at a meeting of MLKMS teachers and staff of the

District's intention to disclose their emails. Teachers and staff were angry and distraught:

one teacher cried in the meeting and others cried after. (Felarca Declaration) The

1    District's announcement already has fostered anger, fear, and demoralization at MLKMS.

2    (See Declarations)

3    45.    One teacher expressed her anger toward Defendant Superintendent Evans via

4    letter, in her Declaration "Judicial Watch's right wing agenda and specific focus on

5    Yvette Felarca suggests that they are using the PRA to harass, silence, and bring down an

6    employee and school community whose political views profoundly differ from their

7    own… I have a lifetime of experience in Berkeley and never before have I felt that

8    expressing my views might place me in harm's way. I am sorely disappointed that you

9    have not even tried to protect me and my right to communicate freely and comfortably

10   with my fellow staff members. I am already feeling silenced!" (Declaration 6, ¶2)

11   46.    The character of Defendants' directive has nothing in common with the "public's

12   business," but everything in common with a politically targeted witch-hunt. It is intended

13   to silence Felarca and prevent her from being one of the most tireless and prominent

14   leaders of the anti-Trump movement. The only purpose of gaining access to the emails of

15   all teachers and staff is to smear, stigmatize, terrorize, and make an example out of

16   Felarca to convince teachers and staff not to take similar public actions against Trump or

17   fascism for fear of being the next one targeted.

18   47.    Judicial Watch's request and BUSD's determination to carry it out, in the absence

19   of court intervention, would chill the free speech and free association rights of teachers

20   and staff, especially, but not limited to, Felarca. (See Declarations.) BUSD's action

21   would threaten every teacher and staff member: they can and will be targeted and

22   released on specifically political terms. Other teachers and staff members who are

23   politically active or associated with organizations with progressive politics will be

24

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
CASE NO.                                                                                    12

1  targeted, and there will be a further chilling effect on free speech, political freedoms,

2  union organizing and academic freedom.

3  48.    As Plaintiff Stefl writes in his attached Declaration: "Handing over my

4  communications with my colleagues to hostile trolls would immediately and irreparably

5  damage my ability to communicate freely with my colleagues, an essential aspect of my

6  work and my fundamental right. The fear mongering of 'who is next' hanging over our

7  school harms our teachers and students, creating a hostile work environment of constant

8  fear and whispers. Successful teaching and learning requires an environment of safety

9  and trust, but that will be immediately and irreparably lost if the BUSD administration

10  serves up the entire staff's private communications to an organization that is hostile to

11  our staff and to our entire mission as a school and as a community." (Declaration of Stefl,

12  ¶2c)

13  49.    Plaintiffs' right to engage in concerted activity would be grievously harmed and

14  curtailed if the targeting of Felarca and her activities outside of work is allowed to go

15  forward. The willingness of coworkers and other union members to associate with

16  Felarca, support her campaigns in defense of workers' grievances and public education,

17  or to campaign for her in an election campaign will be sharply curtailed if she is

18  successfully targeted and the implicit message goes out that one should ostracize her and

19  treat her as a pariah if one is to preserve one's own safety from harassment and ultimately

20  safeguard one's job at the school.

21  50.    Defendants' illegal action under the pretext of meeting a CPRA request would

22  achieve the opposite of "openness." Felarca has been completely transparent about her

23  political views and has defended the right of parents and students to organize in defense

24

of public education, Felarca herself, anti-racism, anti-sexism, and immigrant rights in public, in the fora designated for such debate, such as BUSD school board meetings. The accountability of the public schools and their leadership to the citizens of Berkeley has been a recurring theme with Felarca. Many of the MLK teachers who are now being asked to reveal personal information have joined her in speaking-out. It is just this openness which Judicial Watch cynically seeks to destroy, by using CPRA as a method to target individual teachers and progressive political views for harassment.

51.     For BUSD to carry through this invalid request without a court test is tantamount to acting in unison with Judicial Watch to abridge the fundamental rights of the plaintiffs, all of whom are employees of BUSD.

52.     Not only would working with Felarca – on this or any activity, including protected union activity – be chilled, but any action that was in opposition to the policies of the Trump regime would be effectively off-limits, because if there is no protection against explicitly political speech, if there is no protection against the targeting of a specific teacher, if there is no protection against targeting a civil rights leader – then there is certainly no protection for any staff member, student, or family member in the District should they attract the attention of the alt-right and/or Trump supporters.

53.     Teachers and staff, especially in the Newcomers student program, are already fearful out of concern for the safety of newcomers or immigrant students because of this request. (Declaration of Felarca; Declarations 5 and 7)

54.     For the MLK staff, release of this information compromises their ability to communicate, work together, and to design to the best of their ability an appropriate educational program for students.

55.    The District's plan to publicize Plaintiffs' emails would have a grave effect on teachers' ability to carry out the level of specific and honest communication that is necessary for the maintenance of a high quality educational environment and functioning school community.  In December 2016, after a Muslim student wanted to quit school due to racist bullying, Felarca and another teacher at the school planned and organized with students a rally outside the school before the first bell – a wall of love and solidarity – in support of Muslim students and against racism and deportations.  This is the kind of action that teachers would have to fear if the targeting of Felarca and explicitly political and anti-racist action is carried out through this CPRA demand.

56.    The pursuit of having a high quality educational environment and a functioning school community has been a central project of the Martin Luther King Jr. teaching staff for many years. Once the degree of and collegiality needed for this task is destroyed – as it would be through the targeting of Felarca and unavoidably her ELL students and through the invasion of privacy of all MLK staff members – it cannot be reinstated for an extended period of time, if ever. The school climate and educational conditions for teachers, and students would be irrevocably harmed.

57.    For the MLK staff, release of this information compromises their ability to communicate, work together, and to design to the best of their ability an appropriate educational program for students. It compromises the ability of Felarca to do the best by her students. (See Declarations) A teacher cried in the staff meeting the Administration called to announce their intent for teachers to search their own emails.

58.    One teacher at MLKMS writes: "At the meeting the district staff asked that we turn over any email communications with the words, 'Felarca,' 'BAMN', 'Antifa,' and

'By All Means Necessary.' Ms Felarca obviously distraught was forced to defend herself. To see her this way both upset and unsettled me, making me afraid to speak freely and openly at work and as I ponder it, even outside of work. Can my outside activities become fodder for the district (or others such as Judicial Watch) to control or condemn me? This is now having a chilling effect on my ability to speak freely." (Declaration 7)

59.      Release of the information will foster anger, fear and demoralization within the public institution, not for the sake of "rooting out corruption," but in the interest of weakening basic constitutional protections and of invading privacy.

60.      None of the sought communications are the "public's business." Teachers and staff at MLKMS are not public officials, and they have a reasonable expectation of privacy in their e-mail, including the privacy needed to conduct their duties and to address conditions affecting the safety and well-being of the children they serve. Converting these e-mails into public records serves no public interest and chills the exercise of speech and association and deters the vital public and civic functions served by these communications.

61.      The only conceivable justification for Judicial Watch's request—to harass and to assist individuals who seek to threaten and intimidate MLKMS teachers and staff due to their political beliefs and associations and/or perceived political beliefs and associations —is illegitimate and insufficient to justify violating the fundamental rights at stake.

62.      Further, Judicial Watch asks BUSD to produce "[t]he personnel file of Martin Luther King, Jr. Middle School teacher Yvette Felarca."

63.      The CPRA exempts the disclosure of "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." Cal.

Gov't Code §6254(c). Therefore, they cannot be produced without any overriding

compelling justification; Judicial Watch and BUSD have not provided any.

**CLASS ACTION ALLEGATIONS**

64.     This action may be properly maintained as a class action pursuant to California

Code of Civil Procedure §382.

65.     Plaintiffs bring this action as a class action on behalf of themselves and the

following class ("the Class"): all faculty and staff at Martin Luther King Middle School

("MLKMS") in BUSD.

66.     Excluded from the Class are the Defendants, and all officers, directors, or agents

of the Defendants.

67.     The likelihood of all individual members of the Class prosecuting separate claims

is remote.

68.     The members of the Class are so numerous that joinder of all members would be

impracticable.

69.     Plaintiffs reserve the right to modify the Class and the class period based on the

results of discovery.

70.     There are common questions of law or fact, including:

      a.     Judicial Watch's request for all communications that mention "Felarca,"

             "Antifa," "By All Means Necessary," and/or "BAMN to all members of

             the Class;

      b.     Whether Defendant's conduct would violate the California Public Records

             Act; and

c.    Whether Defendant's conduct would violate state and federal laws protecting freedom of speech, freedom of association, and privacy and the Educational Employment Relations Act.

71.    Plaintiffs' claims are typical of the members of the Class because Plaintiffs and all members of the Class would potentially be injured by the same wrongful practices as described in this Complaint. Plaintiff's claims arise from the same practices and course of conduct that gives rise to the claims of the Class's members, and are based on the same legal theories.

72.    Plaintiffs will fairly and adequately represent the interests of the members of the Class. Plaintiffs' interests are the same as, and not in conflict with, those of the other members of the Classes.

73.    Questions of law or fact common to the members of the Class predominate, and a class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. The likelihood of individual members of the Class prosecuting separate claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action, and certification of the Class is proper.

74.     Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Classes would be proper on the additional ground that Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to members of each Class as a whole.

**COUNT ONE: Violation of the California Public Records Act**
**(Cal. Gov't Code §§6250, *et seq.*)**

75.     Plaintiffs reallege each and every preceding paragraph in this Complaint as if fully set forth here.

76.     To qualify as a public record that must be disclosed under the California Public Records Act ("CPRA"), a writing must "contain [] information relating to the conduct of the public's business." Cal. Gov't Code §6252(e).

77.     Requestor Judicial Watch's requests to BUSD for all communications from MLKMS faculty and staff work e-mails that mention "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN" and for Felarca's personnel file are expansive, broad, and not related to the public's business.

78.     The CPRA also exempts from disclosure "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law." Cal. Gov't Code §6254(k).

79.     Defendant BUSD's directive to make public all communications among MLKMS faculty and staff that mention "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN" is prohibited by the Federal and State Constitutions, which protect freedom of speech and association and the right to privacy. They also violate the Educational

1    Employment Relations Act ("EERA"), which protects education employees' right to

2    engage in concerted activity for their mutual protection.

3    80.    The CPRA exempts from disclosure "[p]ersonnel, medical, or similar files, the

4    disclosure of which would constitute an unwarranted invasion of personal privacy." Cal.

5    Gov't Code §6254(c).

6    81.    The right to privacy in one's personnel files has been given "forceful recognition

7    in both federal and state legislation," *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 319, fn.

8    16 (1979). An individual's personnel file contains "vast amounts of personal data,"

9    including "where he was born, the names of his parents, where he has lived from time to

10   time, his high school or other school records, results of examinations, evaluations of his

11   work performance." Department of the *Air Force v. Rose*, 425 U.S. 352, 269 (1976).

12   Access to personnel files is "drastically limited… only to supervisory personnel directly

13   involved with the individual." Id.

14   82.    Judicial Watch has provided no justification for converting Felarca's personnel

15   file into a public record that would override the CPRA's prohibition of disclosures that

16   violate federal and state law or CPRA's strong presumption of nondisclosure of personnel

17   files.

18              **COUNT TWO: Violation of Freedom of Speech and Freedom of Association**
               **(First Amendment to U.S. Constitution; Article I, Section 2 of California**
19                              **Constitution, 42 U.S.C. §1983)**

20   83.    Plaintiffs reallege each and every preceding paragraph in this Complaint as if

21   fully set forth here.

22

23

24

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
CASE NO.                                                           20

84.    The First and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of the California Constitution protect the rights of freedom of speech and freedom of association.

85.    Freedom of association is fundamental component of freedom of speech: "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly." *National Ass'n for Advancement of Colored People v. State of Alabama*, 357 U.S. 449, 460 (1958).

86.    Government action that interferes with and discourages speech and association must survive "exacting scrutiny." The courts have declared: "[T]he government must justify its actions not only when it imposes direct limitations on associational rights, but also when governmental action 'would have the practical effect 'of discouraging' the exercise of constitutionally protected political rights'... Such actions have a chilling effect on, and therefore infringe, the exercise of fundamental rights. Accordingly, they 'must survive exacting scrutiny.'" *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159-60 (9th Cir. 2010)

87.    The right not to disclose one's political opinions and associations is fundamental to preserve freedom of association: "Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id.* at 462.

88.    This "inviolability of privacy" is especially strong, where an associated group "has made an uncontroverted showing that on past occasions revelation of the identity of

its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *Id.*

89.    Further, "[t]he First Amendment privilege [against disclosure]... has never been limited to the disclosure of identities of rank-and-file members." *Perry*, 591 F.3d at 1162. The disclosure of "views expressed and ideas advocated" at political party meetings, or statements of a "highly sensitive and political character" at union membership meetings could have a deterrent effect on those protected activities. Id.

90.    In the face of such violation of the right to freedom of association, the government must "demonstrate[] an interest in obtaining the disclosures it seeks from Plaintiff which is sufficient to justify the deterrent effect which we have concluded these disclosures may well have..." *NAACP*, 357 U.S. at 463. This interest must be "compelling." Id. Further, the request "must also be carefully tailored to avoid unnecessary interference with protected activities." *Perry*, 591 F.3d at 1161.

91.    Felarca has faced political witch-hunt from BUSD for her political activities with the organization BAMN. The Plaintiffs have faced a flood of harassment and threats to themselves at MLKMS during the past year from right-wing trolls who seek to target Felarca, anti-fascist organizations, and any employee at MLKMS who would support the same.

92.    BUSD's request for Plaintiffs to release all communications that mention "Felarca," "Antifa," "By All Means Necessary," or "BAMN" has a chilling effect on Plaintiffs' speech, association, and participation in concerted activities for their mutual benefit.

93.    BUSD and Judicial Watch have provided no interest for their request, let alone a "compelling" one.

**COUNT THREE: Violation of Right to Privacy**
**(Fourth Amendment to U.S. Constitution; Article I, Section 1 of California Constitution, 42 U.S.C. §1983)**

94.    Plaintiffs reallege each and every preceding paragraph in this Complaint as if fully set forth here.

95.    The Fourth Amendment to the United States Constitution and Article I, Section 1 of the California Constitution protect the right to privacy.

96.    Teachers and staff at MLKMS have a reasonable expectation of privacy in their e-mails not being released as public records, particularly those e-mails in which they discuss confidential matters related to their students, their students' families, ensure a high quality educational environment and functioning school community in the face of right-wing intimidation and bullying. Teachers and staff at MLKMS are not public officials and do not possess any decision-making authority that lessens their reasonable expectation of privacy. See *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

97.    No amount of redacting names, email addresses, etc. would protect individual Plaintiffs from the right-wing trolls who have been determined to identify MLKMS teachers and staff for harassment and bullying as well as the entire school.

98.    Employees have a privacy interest in their personnel files. The right to privacy in one's personnel files has been given "forceful recognition in both federal and state legislation," *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 319, fn. 16 (1979). An individual's personnel file contains "vast amounts of personal data," including "where he was born, the names of his parents, where he has lived from time to time, his high school

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
CASE NO.                                                                                      23

1   or other school records, results of examinations, evaluations of his work performance."

2   *Department of the Air Force v. Rose*, 425 U.S. 352, 269 (1976). Access to personnel files

3   is "drastically limited… only to supervisory personnel directly involved with the

4   individual." *Id*.

5   99.    The CPRA exempts from disclosure "[p]ersonnel, medical, or similar files, the

6   disclosure of which would constitute an unwarranted invasion of personal privacy." Cal.

7   Gov't Code §6254(c).

8   100.    Judicial Watch has provided no justification for converting Felarca's personnel

9   file into a public record that would override the CPRA's strong presumption of

10  nondisclosure or CPRA's prohibition of disclosures that violate federal and state law.

11
      **COUNT FOUR: Violation of Educational Employment Relations Act (EERA)**
12    **(California Government Code §§ 3540 *et seq.*)**
      **DEFENDANT B.U.S.D.**
13
14  101.    Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth

    here.
15
16  102.    The Educational Employment Relations Act (EERA) governs collective

17  bargaining between school districts and their employees. Government Code Section

    3543(a) states: "Public school employees shall have the right to form, join, and
18
19  participate in the activities of employee organizations of their own choosing for the

20  purpose of representation on all matters of employer-employee relations" Cal. Govt.

    Code § 3543(a).
21
22  103.    Employees have the right to use employer computer and email systems for union

23  organizing and furthering the interests of employees. Purple Communications Inc., 361

24  NLRB No. 126 (2014). (While NLRB decisions are not binding on public employers,

    VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
    CASE NO.                                                                    24

California's Public Employment Relations Board (PERB), which has jurisdiction over the state public sector, often adopts NLRB rulings, especially where PERB attempts to conform legal principles to the realities of evolving technology.)

104.    Plaintiff Felarca, in addition to being an advocate for civil rights and immigrant rights, advocates for the rights of her union's (BFT's) members and is an elected delegate to state and national BFT conventions and a member of the BFT's union executive board. She was a candidate for BFT president in May 2017.

105.    Defendants' extraordinary and unusual compliance with Judicial Watch's unprecedented request action toward Felarca retaliates against her for her protected activities and sends a message to other BUSD staff and faculty that engaging in protected activities will expose them to retaliation.

106.    Further, under labor law "management officials may observe public union activity without violating the Act so long as those officials do not 'do something out of the ordinary'… such as increasing its monitoring during an organizational campaign or focusing its monitoring efforts on protected conduct or union activists." *Id.* at 15.

107.    BUSD's directive to Plaintiffs to produce all communications that mention "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN" and to publish them as "public records" for right-wing organizations to see is out of the ordinary, overly broad, spies on and deters the ability of employees' to express their political opinions and engage in concerted activities, and therefore interferes with Plaintiffs' right to engage in concerted activity.

**COUNT FIVE: Illegal Employer Act to Direct and Control of Employees' Political Activity**
**(California Labor Code §§ 1101,1102)**

108.    California Labor Code §1101 states: "No employer shall make, adopt or enforce any rule, regulation, policy… [c]ontrolling or directing, or tending to control or direct the political activities or affiliations of employees.

109.    California Labor Code §1101 states: "No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity."

110.    Defendants' actions would chill Plaintiffs' freedom of speech and freedom of association. It not only sends the hostile message that those teachers and staff who engage in political activities like Felarca will also be targeted, terrorized, and witch-hunted; it sends the message that teachers and staff who engage in political activity or share political views of any sort that BUSD and/or a section of the public is hostile to can and will be targeted and victimized.

111.    Defendants' actions constitute control and directing of Plaintiffs' political activities in violation of California labor law.

## PRAYER

WHEREFORE, Plaintiff respectfully requests the following relief:

1.    Injunctive relief, including but not limited to the following:

    a.    an order enjoining Defendants from releasing as public records MLKMS teachers' and staff's communications because they mention "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN";

    b.    an order enjoining Defendants from demanding and/or requesting that teachers and staff at MLKMS provide BUSD communications to be released as public records because they mention "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN"; and

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE
CASE NO.                                                                          26

1

        c.     an order enjoining Defendants from releasing Felarca's personnel

2                 file as a public record.

3    2.    Such other and further relief as supported by the evidence in this case and

                as this Court and/or the jury may deem appropriate.

4

5                      By Plaintiff's Attorneys,

6                      UNITED FOR EQUALITY AND AFFIRMATIVE

                     ACTION LEGAL DEFENSE FUND (UEAALDF)

7

                     BY:    /s/ Ronald Cruz

8                      Ronald Cruz (State Bar No. 267038)

                     Shanta Driver (Michigan Bar No. P65007)*

9                      1985 Linden Street

                     Oakland, California 94607

10                    (510) 875-4463 (Ronald Cruz)

                     *Pro hac vice application pending

11

                     Dated: October 30, 2017

12

13

14

15

16

17

18

19

20

21

22

23

24

VERIFIED COMPLAINT AND PETITION FOR WRIT OF MANDATE

CASE NO.                                                 27

**VERIFICATION**

I, YVETTE FELARCA, declare as follows:

1.      I am a party in the above-entitled action.

2.      I have read the foregoing Complaint and Petition for Writ of Mandate and know its contents. The matters stated therein are true based on my own knowledge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed in Berkeley, California on October 30, 2017.

_____
YVETTE FELARCA