1  RONALD CRUZ, State Bar No. 267038
   SHANTA DRIVER, Michigan Bar No. P65007*
2  United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
   1985 Linden Street
3  Oakland, CA 94607
   (510) 875-4463 Fax: (313) 586-0089
4  ronald.cruz@ueaa.net, shanta.driver@ueaa.net
   Attorneys for Plaintiffs/Petitioners
5  *Appearing *pro hac vice*

6

7

8              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
9

   YVETTE FELARCA, LORI NIXON,          **CASE NO.: 3:16-cv-06282-VC**
10 LARRY STEFL,

11 Plaintiffs/Petitioners,              **VERIFIED FIRST AMENDED COMPLAINT**
                                        **AND PETITION FOR WRIT OF**
12 vs.                                  **MANDAMUS**

13 BERKELEY UNIFIED SCHOOL              • **California Public Records Act (Cal. Gov't**
   DISTRICT, DONALD EVANS, JANET          **Code §§ 6250 *et seq.*)**
14 LEVENSON,                            • **First Amendment to U.S. Constitution**
                                          **(Freedom of Speech, Freedom of**
15 Defendants/Respondents.                **Association)**
   _____     • **Fourth Amendment to U.S. Constitution**
16                                        **(Privacy)**
   JUDICIAL WATCH,                      • **California Constitution Article 1, §§ 1-2**
17                                      • **California Code of Civil Procedure §§ 382,**
   Real Party in Interest.               **1085, 1086**
18 _____     • **Educational Employment Relations Act**
                                          **(EERA) (Cal. Gov't Code §§ 3540 *et seq.*)**
19                                      • **California Labor Code §§ 1101, 1102**

20                                      **CLASS ACTION**

21

22

23

24
   _____
   VERIFIED FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDAMUS
              CASE NO. 3:16-cv-06282-VC                                    1

**INTRODUCTION**

1.      This Verified Complaint and Petition is brought by teacher Yvette Felarca, staff member Lori Nixon and teacher Larry Stefl, who work at Martin Luther King Middle School ("MLKMS") in Berkeley Unified School District ("BUSD"), to enjoin Defendants BUSD, BUSD Superintendent Donald Evans, and MLKMS Principal Janet Levenson from (1) directing MLKMS staff and faculty to surrender all communications, including electronic (e-mail) communications, that state the words "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN," to BUSD, (2) mining email accounts of MLKMS staff and faculty for such documents and/or providing such documents to Real Party in Interest Judicial Watch, and (3) giving Felarca's confidential personnel file to Judicial Watch.

2.      Plaintiffs Felarca, Nixon and Stefl seek class-representative status to represent all teachers and staff at MLKMS.

3.      Immediate action is necessary because Defendants have ordered Plaintiffs to produce these e-mails by November 2, 2017 to give them to Judicial Watch. For Plaintiffs who do not respond, Defendants will mine their emails for communications that meet the stated criteria and release them to Judicial Watch (EXHIBIT 1 - Levenson email).

4.      Judicial Watch and BUSD seek to put on public display the emails of teachers and staff at MLKMS, a school community that has been defending Felarca and the city of Berkeley from right-wing attack. Defendant seeks to violate Plaintiffs' privacy, chill their freedom of speech, freedom of association, and right to engage in protected activities, and disrupt their public function as educators.

5.      Berkeley has found itself at ground zero in the fight against Donald Trump's policies of anti-immigrant scapegoating and tendency toward creating an authoritarian regime. The people of Berkeley, including Plaintiffs, have been at the center of opposing the alt-right and neo-Nazi thugs who have repeatedly targeted Berkeley precisely because of its principles of anti-racism, tolerance and freedom of speech. This case will have a tremendous impact on the future course of this struggle.

6.      Berkeley's leading role in the anti-Trump movement has also meant that Felarca, a national organizer with the Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary (BAMN) who has organized protests and done countless media interviews, has quickly gained a broad audience and recognition.

7.      BUSD has been conducting a political witch-hunt against Felarca, including attempting to remove her from her job in Fall 2016 on baseless, politically-motivated charges.

8.      BUSD's action violates the central constitutional protections that are held most dear by this community and which have taken on new, deeper, and more intimate meaning given the history we are living through. Injunctive relief for Plaintiffs would make clear that the protections of Privacy, Freedom of Speech, Association, and Political Freedom—the underpinnings of democracy—are not mere phrases but living ideals to which this Court, California, and the United States subscribe.

9.      BUSD's action has caused alarm and fear among Plaintiffs and other teachers and staff at MLKMS: they are fearful of speaking out or expressing opinions on political or social issues, in or out of school, for fear of being "next." (See attached Declarations of

1    Plaintiffs Felarca, Nixon, and Stefl, Declarations 5, 6, 7, 8 and 9, and Declaration of

2    Tania Kappner.) The atmosphere of fear and the awareness that communications can be

3    handed over to hostile political organizations disrupts the school's educational mission,

4    by sowing fear and division among teachers and staff, some of whom are fearful of

5    communicating with Felarca in the course of their duties due to BUSD's actions and

6    fearful of speaking and associating in ways that will be met with political witch-hunt and

7    attack. No amount of redacting names, email addresses, etc. would protect individual

8    Plaintiffs from the right-wing trolls who have been determined to identify MLKMS

9    teachers and staff for harassment and bullying as well as the entire school.

10   10.    BUSD's action sets a dangerous precedent. Employers are barred from asking

11   employees about and/or making public their political affiliations, such as whether they

12   are Democrats or Republicans, where they stand on ballot propositions, or whether they

13   are members of the ACLU, BAMN, Operation Rescue, or any other political

14   organization. Allowing public employers to ask employees to provide and then publicize

15   that kind of information chills and deters employees' freedom of speech and association

16   for fear of employer surveillance or public exposure, and it allows public employers to

17   pick and choose which employees to retain or drive out based on their political beliefs

18   and exposes employees to political witch-hunt and harassment for their beliefs.

19   11.    BUSD's pursuit of Judicial Watch's illegal CPRA request would transform the

20   CPRA into something unrecognizable and far-removed from its original intent of making

21   the acts of government officials public. Instead, it would become a tool for employers and

22   political organizations to spy on and police public employees for their political beliefs

23   and affiliations, including concerted activities for their mutual benefit.

24

12.     To defend their fundamental rights of freedom of speech, freedom of association, privacy, and union right to organize, Plaintiffs seek relief.

**THE PARTIES**

13.     Plaintiff/Petitioner Yvette Felarca is an individual who is employed in Berkeley, California. Felarca is a teacher and employee at Martin Luther King Middle School ("MLKMS") in Berkeley Unified School District (BUSD). She is a nationally-prominent leader in the Coalition to Defend Affirmative Action, Integration and Immigrant Rights and Fight for Equality By Any Means Necessary (BAMN). She has served as MLKMS' elected site representative and is a member of the Berkeley Federation of Teachers' (BFT's) executive board.

14.     Plaintiff/Petitioner Lori Nixon is an individual who is employed in Berkeley, California. Nixon is a staff member and employee at MLKMS in BUSD.

15.     Plaintiff/Petitioner Larry Stefl is an individual who resides is employed in Berkeley, California. Stefl is a teacher and employee at MLKMS in BUSD.

16.     Defendant/Respondent Berkeley Unified School District ("BUSD") is in Berkeley, California. It is a public entity and an educational service agency established and maintained by the laws and constitution of the State of California.

17.     Defendant/Respondent Donald Evans is the superintendent of BUSD. His place of employment is in Berkeley, California. He is sued in his official capacity.

18.     Defendant/Respondent Janet Levenson is the principal of MLKMS. Her place of employment is in Berkeley, California. She is sued in her official capacity.

19.     Real Party in Interest Judicial Watch is a conservative organization located in Washington, D.C. Judicial Watch invoked the California Public Records Act ("CPRA")

---

VERIFIED FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDAMUS
CASE NO. 3:16-cv-06282-VC                                                          5

1   when it requested that BUSD produce all BUSD administration and MLKMS faculty and

2   staff communications that mention "Felarca," "Antifa," "By All Means Necessary," and

3   "BAMN" and requested Felarca's confidential personnel file.

4   **JURISDICTION AND VENUE**

5   20.     Just as the federal courts have recognized the implied right of individuals whose

6   rights would be violated by a federal government agency's release of records pursuant to

7   a Freedom of Information Act (FOIA) request to initiate a "reverse-FOIA request"

8   against the agency to request injunctive relief to protect their rights, the California courts

9   have recognized the right of individuals whose rights would be violated by a California

10   government agency's release of records pursuant to CPRA request to initiate a "reverse-

11   CPRA lawsuit" to request injunctive relief to protect their rights. *Marken v. Santa*

12   *Monica-Malibu Unified School Dist.,* 202 Cal.App.4th 1250, 1265 (Ct. App. 2012).

13   21.     This action is brought pursuant to: 42 U.S.C. §1983; the First and Fourth

14   Amendments to the United States Constitution; the California Constitution; the California

15   Public Records Act (Cal. Gov't Code §§6250 *et seq.*); and the California Educational

16   Employment Relations Act (EERA, Cal. Gov't Code §§3540 *et seq.*).

17   22.     Plaintiffs are employed in Berkeley, California. All the Defendants are employed

18   and/or are in Berkeley, California. The events, acts, and/or omissions complained of

19   herein occurred in Berkeley, California, and this action is properly assigned to the U.S.

20   District Court of California, Northern District.

21   23.     This Court has subject matter jurisdiction under 28 USC §1331 and 28 USC

22   §1343(3). This Court has supplemental jurisdiction of related state claims from the same

23   case or controversy under 28 USC §1367(a).

24

24.     This action is timely filed within all applicable statutes of limitation.

## INTRADISTRICT ASSIGNMENT

25.     A substantial part of the events which give rise to this claim occurred in Alameda County, making assignment to the Oakland Division appropriate under Civil L.R. 3-2(d).

## GENERAL FACTUAL ALLEGATIONS

26.     To qualify as a public record that must be disclosed under the California Public Record Act ("CPRA"), a writing must "contain [] information relating to the conduct of the public's business." Cal. Gov't Code §6252(e). The California Supreme Court expands on this definition: "[T]o qualify as a public record under CPRA, at a minimum, a writing must relate in some substantive way to the conduct of the public's business. This standard, though broad, is not so elastic as to include every piece of information the public may find interesting. Communications that are primarily personal, containing no more than incidental mentions of agency business, generally will not constitute public records." *City of San Jose v. Superior Court,* 2 Cal.5th 608, 618 (Cal. 2017).

27.     Further, the CPRA does not authorize the disclosure of records, "the disclosure of which is exempted or prohibited pursuant to federal or state law." Cal. Gov't Code §6254(k). Disclosure may not violate constitutional and statutory rights to privacy, freedom of speech, freedom of association, and to engage in protected activities.

28.     The CPRA exempts "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy," from disclosure. Cal. Gov't Code §6254(c).

29.     Felarca is not a public official. She and the other Plaintiffs are teachers and staff who have no decision-making power in the District. Ms. Felarca, who is targeted in the request, has no power to set policy for the Berkeley Unified School District (BUSD).

30.     Felarca is a teacher of English Language Learners (ELL) at MLKMS, which is the only middle school in Berkeley with a Newcomers program for recent immigrant students. Felarca is a member of the civil rights and immigrant rights organization the Coalition to Defend Affirmative Action, Integration, and Immigrant Rights and Fight for Equality By Any Means Necessary (BAMN), and she is affiliated with the national teachers' caucus EON/BAMN (Equal Opportunity Now/By Any Means Necessary), in which members are aware and expectant of the outcome of this request (See Declaration of Mark Airgood). As a national organizer with BAMN, Felarca has organized and led protests opposing Trump's policies scapegoating immigrants and Muslims and against Trump's alt-right and neo-Nazi supporters.

31.     Since Donald Trump was elected, the City of Berkeley, the UC-Berkeley campus, and the city's public school system have lived up to their progressive reputation and consistently warded off threats and attacks by alt-right and immigrant-bashing demagogues. Berkeley's leading role in the anti-Trump movement has also meant that Felarca has quickly gained a broad audience and recognition. Her numerous speeches and interviews on local, national, and international media outlets as an organizer and leader of BAMN have garnered international attention from Trump opponents and supporters. Her political views are most closely aligned with the immigrant rights and Black Lives Matter movements.

1    32.    In her role as a BAMN leader and leading civil rights activist in California and the

2    nation, Felarca has become a favorite target for the alt-right and Trump supporters. Her

3    organizing against neo-fascist and alt-right marches in Berkeley, as well as her stand

4    against the Trump policies of increased ICE raids and arrests, have made her a target of

5    far-right Internet trolls. Her well-publicized fight to keep her job in Berkeley Unified

6    Schools and to recoup pay that the District Administration withdrew from her bank

7    account in 2016 was supported by the Berkeley Federation of Teachers (BFT) through

8    the Grievance process. The case was resolved in Felarca's favor after investigation by the

9    District Administration.

10    33.    Felarca has been a union representative for MLKMS and has run for the Berkeley

11    Federation of Teachers (BFT) presidency on several occasions. She has repeatedly been

12    elected as a BFT delegate to the American Federation of Teachers (AFT) National

13    Convention and has been elected to represent BFT at the California Federation of

14    Teachers (CFT) State Conference. She has represented numerous teachers in grievance

15    procedures and has been a vocal advocate for public education and against the expansion

16    of charter schools in Berkeley at BUSD Board of Education meetings.

17    34.    For over a year, teachers and staff at the school have heroically united against the

18    abuse that Ms. Felarca and the rest of the staff have suffered at the hands of alt-right, neo-

19    fascist, and violent Trump supporters.

20    35.    In the summer of 2016, Ms. Felarca spoke to CNN and other media about

21    protesting and being stabbed by neo-Nazis in Sacramento. Within hours, a troll campaign

22    attempted to use cyber terrorism to terrorize Ms. Felarca, teachers, staff, and students at

23

24

1  the school. Despite this, teachers and staff stood strong and united together, refusing to be

2  cowed.

3  36.    A few weeks later in September 2016, the District resurrected the witch-hunt by

4  taking action against Felarca, removing her from her classroom for weeks. Again, the

5  King teachers, staff, and community became even more active, speaking out at rallies,

6  school board meetings and community meetings to successfully restore Ms. Felarca to

7  her classroom. (See attached Declarations)

8  37.    In February 2017, after Felarca appeared on Fox News to debate host Tucker

9  Carlson on the alt-right and fascism, insane trolls again bombarded Felarca and the

10  school with death threats via email and phone calls.

11  38.    As Plaintiff Stefl writes in his Declaration: "Last spring [2017], myself, other staff

12  members, and our staff as a whole were terrorized with death threats, stalked at work in

13  the community by those who politically targeted our school and staff. Our staff received

14  counseling and individuals were forced to take time off from work as a result of the

15  immediate trauma these vile threats and harassment created." (Declaration of Larry Stefl)

16  39.    The right-wing trolls' goal was to enlist support from other staff and

17  administration to turn on Ms. Felarca and force her to abandon her students and the

18  school community. Again, King teachers and staff showed integrity and unity,

19  overcoming that divisive period, and healing on the side of each other, free speech, and

20  anti-racist activism.

21  40.    Through repeated witch-hunts by crazy right-wing trolls and by the District

22  administration, the teachers, staff, and school community have ultimately stuck together,

23  heroically supporting not only one of their most politically active and outspoken teachers,

24

1  but also their own right to speak out against Trump's racist scapegoating and on behalf of

2  immigrants, Muslim, black, and other students facing hardship. (Declaration of Larry

3  Stefl)

4  41.     On September 1, 2017, the Washington, D.C.-based conservative organization

5  and Real Party in Interest, Judicial Watch, sent a request to Defendant BUSD requesting

6  that it produce for public inspection "1) Any and all records of communications between

7  the BUSD Superintendent and any other BUSD officials and/or staff of Martin Luther

8  Kind, Jr. [sic] Middle School mentioning 'Felarca', 'Antifa', 'By All Means Necessary',

9  and/or 'BAMN.' 2) Any and all records of communications between and among

10  faculty/staff members of Martin Luther King, Jr. Middle School mentioning "Felarca

11  among faculty/staff members of Martin Luther King, Jr. Middle School mentioning

12  'Felarca,' 'Antifa,' 'By All Means Necessary,' and/or 'BAMN.' 3) The personnel file of

13  Martin Luther King, Jr. Middle School teacher Yvette Felarca." The request claimed

14  authority for this request under the California Public Records Act ("CPRA").

15  42.     Judicial Watch is a right-wing, anti-immigrant organization with a history of

16  attacking sanctuary city policies. It is now targeting the school and teachers who teach

17  and publicly defend immigrant students inside and outside of school. Judicial Watch has

18  held weekly meetings in its Washington, D.C. offices over the past year with Breitbart

19  News and other conservative, pro-Trump, and alt-right politicians and reporters to

20  coordinate messaging and plan a campaign (named "Groundswell") to promote and

21  publicize these political views.

22  43.     On October 25, 2017, Defendant MLKMS Principal Janet Levenson sent an email

23  out to all MLKMS teachers and staff directing them to produce all emails that mention

24

"Felarca," "Antifa," "By All Means Necessary," and/or "BAMN" to BUSD so that they would be given to Judicial Watch. If teachers and staff did not do so by November 2, 2017, BUSD personnel would mine their emails and obtain all emails fitting this criterion and give them to Judicial Watch. (See EXHIBIT 1 – Levenson email)

44.    Defendants Superintendent Evans and Principal Levenson announced at the October 25, 2017 meeting of MLKMS teachers and staff of the District's intention to disclose their emails. Teachers and staff were angry and distraught: one teacher cried in the meeting and others cried after. (Felarca Declaration) The District's announcement already has fostered anger, fear, and demoralization at MLKMS. (See Declarations)

45.    One teacher expresses in her Declaration to Defendant Evans: "Judicial Watch's right wing agenda and specific focus on Yvette Felarca suggests that they are using the PRA to harass, silence, and bring down an employee and school community whose political views profoundly differ from their own… I have a lifetime of experience in Berkeley and never before have I felt that expressing my views might place me in harm's way. I am sorely disappointed that you have not even tried to protect me and my right to communicate freely and comfortably with my fellow staff members. I am already feeling silenced!" (Declaration 6, ¶2)

46.    The character of Defendants' directive has nothing in common with the "public's business," but everything in common with a politically targeted witch-hunt. It is intended to silence Felarca and prevent her from being one of the most tireless and prominent leaders of the anti-Trump movement. The only purpose of gaining access to the emails of all teachers and staff is to smear, stigmatize, terrorize, and make an example out of

1   Felarca to convince teachers and staff not to take similar public actions against Trump or

2   fascism for fear of being the next one targeted.

3   47.     Judicial Watch's request and BUSD's determination to carry it out, in the absence

4   of court intervention, would chill the free speech and free association rights of teachers

5   and staff, especially, but not limited to, Felarca. (See Declarations.) BUSD's action

6   would threaten every teacher and staff member: their communications can and will be

7   targeted and released on specifically political terms. Other teachers and staff members

8   who are politically active or associated with organizations with progressive politics will

9   be targeted, and there will be a further chilling effect on free speech, political freedoms,

10  union organizing and academic freedom.

11  48.     As Plaintiff Stefl writes in his attached Declaration: "Handing over my

12  communications with my colleagues to hostile trolls would immediately and irreparably

13  damage my ability to communicate freely with my colleagues, an essential aspect of my

14  work and my fundamental right. The fear mongering of 'who is next' hanging over our

15  school harms our teachers and students, creating a hostile work environment of constant

16  fear and whispers. Successful teaching and learning requires an environment of safety

17  and trust, but that will be immediately and irreparably lost if the BUSD administration

18  serves up the entire staff's private communications to an organization that is hostile to

19  our staff and to our entire mission as a school and as a community." (Declaration of Stefl,

20  ¶2c)

21  49.     Plaintiffs' right to engage in concerted activity would be grievously harmed and

22  curtailed if the targeting of Felarca and her activities outside of work is allowed to go

23  forward. The willingness of coworkers and other union members to associate with

24

VERIFIED FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDAMUS
CASE NO. 3:16-cv-06282-VC                                                    13

1   Felarca, support her campaigns in defense of workers' grievances and public education,

2   or to campaign for her in an election campaign will be sharply curtailed if she is

3   successfully targeted and the implicit message goes out that one should ostracize her and

4   treat her as a pariah if one is to preserve one's own safety from harassment and ultimately

5   safeguard one's job at the school.

6   50.    Defendants' illegal action under the pretext of meeting a CPRA request would

7   achieve the opposite of "openness." Felarca has been completely transparent about her

8   political views and has defended the right of parents and students to organize in defense

9   of public education, Felarca herself, anti-racism. anti-sexism, and immigrant rights in

10   public, in the fora designated for such debate, such as BUSD school board meetings. The

11   accountability of the public schools and their leadership to the citizens of Berkeley has

12   been a reoccurring theme of Felarca. Many of the MLKMS teachers who are now being

13   asked to reveal personal information have joined her in speaking-out.  It is just this

14   openness that Judicial Watch cynically seeks to destroy, by using CPRA as a method to

15   target individual teachers and progressive political views for harassment.

16   51.    For BUSD to carry through this invalid request without a court test is tantamount

17   to acting in unison with Judicial Watch to abridge the fundamental rights of the plaintiffs,

18   all of whom are employees of BUSD.

19   52.    Not only would working with Felarca – on this or any activity, including

20   protected union activity – be chilled; also any action that is in opposition to the policies

21   of the Trump regime would be effectively off-limits, because if there is no protection

22   against explicitly political speech, if there is no protection against the targeting of a

23   specific teacher, and if there is no protection against targeting a civil rights leader, then

24

1    there is certainly no protection for any staff member, student, or family member in the

2    District should they attract the attention of the alt-right and/or Trump supporters.

3    53.     Teachers and staff, especially in the Newcomers student program, are already

4    fearful out of concern for the safety of newcomers or immigrant students because of this

5    request. (Declaration of Felarca; Declarations 5 and 7)

6    54.     For the MLK staff, release of this information compromises their ability to

7    communicate, work together, and to design to the best of their ability an appropriate

8    educational program for students.

9    55.     For the District to carry through this directive would have a grave effect on

10   teachers' ability to carry out the level of specific and honest communication that is

11   necessary for the maintenance of a high quality educational environment and functioning

12   school community.  In December 2016, after a Muslim student wanted to quit school due

13   to racist bullying, Felarca and another teacher at the school planned and organized with

14   students a rally outside the school before the first bell – a wall of love and solidarity – in

15   support of Muslim students and against racism and deportations.  This is the kind of

16   action that teachers would have to fear if the targeting of Felarca and explicitly political

17   and anti-racist action is carried out through this CPRA demand.

18   56.     The pursuit of having a high quality educational environment and a functioning

19   school community has been a central project of the Martin Luther King Jr. teaching staff

20   for many years. Once the degree of and collegiality needed for this task is destroyed – as

21   it would be through the targeting of Felarca and unavoidably her ELL students and

22   through the invasion of privacy of all MLK staff members – it cannot be reinstated for an

23

24

extended period of time, if ever. The school climate and educational conditions for teachers, and students would be irrevocably harmed.

57.     For the MLK staff, release of this information compromises their ability to communicate, work together, and to design to the best of their ability an appropriate educational program for students. It compromises the ability of Felarca to do the best by her students. (See Declarations) A teacher cried in the staff meeting in the meeting the Administration called to announce their intent for teachers to search their own emails. Felarca describes how isolating the experience is for her.

58.     One teacher at MLKMS writes: "At the meeting the district staff asked that we turn over any email communications with the words, 'Felarca,' 'BAMN,' 'Antifa,' and 'By All Means Necessary.' Ms. Felarca obviously distraught was forced to defend herself. To see her this way both upset and unsettled me, making me afraid to speak freely and openly at work and as I ponder it, even outside of work. Can my outside activities become fodder for the district (or others such as Judicial Watch) to control or condemn me? This is now having a chilling effect on my ability to speak freely." (Declaration 7)

59.     Release of the information will foster anger, fear and demoralization within the public institution, not for the sake of rooting out corruption, but in the interest of weakening basic constitutional protections and invading privacy.

60.     None of the sought communications are the "public's business." Teachers and staff at MLKMS are not public officials, and they have a reasonable expectation of privacy in their e-mail, including the privacy needed to conduct their duties and to address conditions affecting the safety and well-being of the children they serve. Converting these e-mails into public records serves no public interest and chills the

1  exercise of speech and association and deters the vital public and civic functions served

2  by these communications.

3  61.    The only conceivable justification for Judicial Watch's request—to harass and to

4  assist individuals who seek to threaten and intimidate MLKMS teachers and staff due to

5  their political beliefs and associations and/or perceived political beliefs and associations

6  —is illegitimate and insufficient to justify violating the fundamental rights at stake.

7  62.    Further, Judicial Watch asks BUSD to produce "[t]he personnel file of Martin

8  Luther King, Jr. Middle School teacher Yvette Felarca."

9  63.    The CPRA exempts the disclosure of "[p]ersonnel, medical, or similar files, the

10  disclosure of which would constitute an unwarranted invasion of personal privacy." Cal.

11  Gov't Code §6254(c). Therefore, they cannot be produced without any overriding

12  compelling justification; Judicial Watch and BUSD have not provided any.

13                              **CLASS ACTION ALLEGATIONS**

14  64.    This action may be properly maintained as a class action pursuant to California

15  Code of Civil Procedure §382.

16  65.    Plaintiffs bring this action as a class action on behalf of themselves and the

17  following class ("the Class"): all faculty and staff at Martin Luther King Middle School

18  ("MLKMS") in BUSD.

19  66.    Excluded from the Class are the Defendants, and all officers, directors, or agents

20  of the Defendants.

21  67.    The likelihood of all individual members of the Class prosecuting separate claims

22  is remote.

23

24

VERIFIED FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDAMUS
CASE NO. 3:16-cv-06282-VC                                                    17

68.     The members of the Class are so numerous that joinder of all members would be impracticable.

69.     Plaintiffs reserve the right to modify the Class and the class period based on the results of discovery.

70.     There are common questions of law or fact, including:

    a.     Judicial Watch's request for all communications that mention "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN to all members of the Class;

    b.     Whether Defendant's conduct would violate the California Public Records Act; and

    c.     Whether Defendant's conduct would violate state and federal laws protecting freedom of speech, freedom of association, and privacy and the Educational Employment Relations Act.

71.     Plaintiffs' claims are typical of the members of the Class because Plaintiffs and all members of the Class would potentially be injured by the same wrongful practices as described in this Complaint. Plaintiff's claims arise from the same practices and course of conduct that gives rise to the claims of the Class's members, and are based on the same legal theories.

72.     Plaintiffs will fairly and adequately represent the interests of the members of the Class. Plaintiffs' interests are the same as, and not in conflict with, those of the other members of the Classes.

73.     Questions of law or fact common to the members of the Class predominate, and a class action is superior to other available methods for the fair and efficient adjudication of

1    this lawsuit, because individual litigation of the claims of all members of the Class is

2    economically unfeasible and procedurally impracticable. The likelihood of individual

3    members of the Class prosecuting separate claims is remote and, even if every Class

4    member could afford individual litigation, the court system would be unduly burdened by

5    individual litigation of such cases. Individualized litigation would also present the

6    potential for varying, inconsistent, or contradictory judgments and would magnify the

7    delay and expense to all parties and to the court system resulting from multiple trials of

8    the same factual issues. Plaintiffs know of no difficulty to be encountered in the

9    management of this action that would preclude its maintenance as a class action, and

10    certification of the Class is proper.

11    74.     Relief concerning Plaintiffs' rights under the laws herein alleged and with respect

12    to the Classes would be proper on the additional ground that Defendants have acted or

13    refused to act on grounds generally applicable to the Classes, thereby making appropriate

14    final injunctive relief or corresponding declaratory relief with regard to members of each

15    Class as a whole.

16

**COUNT ONE: Violation of the California Public Records Act**
**(Cal. Gov't Code §§6250, *et seq.*)**

17

18    75.     Plaintiffs reallege each and every preceding paragraph in this Complaint as if

19    fully set forth here.

20    76.     To qualify as a public record that must be disclosed under the California Public

21    Records Act ("CPRA"), a writing must "contain [] information relating to the conduct of

22    the public's business." Cal. Gov't Code §6252(e).

23

24

VERIFIED FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDAMUS
CASE NO. 3:16-cv-06282-VC           19

77.     Requestor Judicial Watch's requests to BUSD for all communications from MLKMS faculty and staff work e-mails that mention "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN" and for Felarca's personnel file are expansive, broad, and not related to the public's business.

78.     The CPRA also exempts from disclosure "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law." Cal. Gov't Code §6254(k).

79.     Defendant BUSD's directive to make public all communications among MLKMS faculty and staff that mention "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN" is prohibited by the Federal and State Constitutions, which protect freedom of speech and association and the right to privacy. They also violate the Educational Employment Relations Act ("EERA"), which protects education employees' right to engage in concerted activity for their mutual protection.

80.     The CPRA exempts from disclosure "[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy." Cal. Gov't Code §6254(c).

81.     The right to privacy in one's personnel files has been given "forceful recognition in both federal and state legislation," *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 319, fn. 16 (1979). An individual's personnel file contains "vast amounts of personal data," including "where he was born, the names of his parents, where he has lived from time to time, his high school or other school records, results of examinations, evaluations of his work performance." *Department of the Air Force v. Rose*, 425 U.S. 352, 269 (1976). Access to personnel files is "drastically limited… only to supervisory personnel directly involved with the individual." *Id.*

82.     Judicial Watch has provided no justification for converting Felarca's personnel

file into a public record that would override the CPRA's prohibition of disclosures that

violate federal and state law or CPRA's strong presumption of nondisclosure of personnel

files.

### COUNT TWO: Violation of Freedom of Speech and Freedom of Association (First Amendment to U.S. Constitution; Article I, Section 2 of California Constitution, 42 U.S.C. §1983)

83.     Plaintiffs reallege each and every preceding paragraph in this Complaint as if

fully set forth here.

84.     The First and Fourteenth Amendments to the United States Constitution and

Article I, Section 2 of the California Constitution protect the rights of freedom of speech

and freedom of association.

85.     Freedom of association is a fundamental component of freedom of speech:

"Effective advocacy of both public and private points of view, particularly controversial

ones, is undeniably enhanced by group association, as this Court has more than once

recognized by remarking upon the close nexus between the freedoms of speech and

assembly." *National Ass'n for Advancement of Colored People v. State of Alabama*, 357

U.S. 449, 460 (1958).

86.     Government action that interferes with and discourages speech and association

must survive "exacting scrutiny." The courts have declared: "[T]he government must

justify its actions not only when it imposes direct limitations on associational rights, but

also when governmental action 'would have the practical effect 'of discouraging' the

exercise of constitutionally protected political rights'... Such actions have a chilling effect

on, and therefore infringe, the exercise of fundamental rights. Accordingly, they 'must

1  survive exacting scrutiny.'" *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159-60 (9th Cir.

2  2010).

3  87.     The right not to disclose one's political opinions and associations is fundamental

4  to preserve freedom of association: "Inviolability of privacy in group association may in

5  many circumstances be indispensable to preservation of freedom of association,

6  particularly where a group espouses dissident beliefs." *Id.* at 462.

7  88.     This "inviolability of privacy" is especially strong, where an associated group

8  "has made an uncontroverted showing that on past occasions revelation of the identity of

9  its rank-and-file members has exposed these members to economic reprisal, loss of

10 employment, threat of physical coercion, and other manifestations of public hostility." *Id*.

11 89.     Further, "[t]he First Amendment privilege [against disclosure]... has never been

12 limited to the disclosure of identities of rank-and-file members." *Perry*, 591 F.3d at 1162.

13 The disclosure of "views expressed and ideas advocated" at political party meetings, or

14 statements of a "highly sensitive and political character" at union membership meetings,

15 could have a deterrent effect on those protected activities. *Id*.

16 90.     In the face of such violation of the right to freedom of association, the

17 government must "demonstrate[] an interest in obtaining the disclosures it seeks from

18 Plaintiff which is sufficient to justify the deterrent effect which we have concluded these

19 disclosures may well have." *NAACP*, 357 U.S. at 463. This interest must be

20 "compelling." *Id*. Further, the request "must also be carefully tailored to avoid

21 unnecessary interference with protected activities." *Perry*, 591 F.3d at 1161.

22 91.     Felarca has faced a political witch-hunt from BUSD for her political activities

23 with the organization BAMN. The Plaintiffs have faced a flood of harassment and threats

24

1    to themselves at MLKMS during the past year from right-wing trolls who seek to target

2    Felarca, anti-fascist organizations, and any employee at MLKMS who would support the

3    same.

4    92.    BUSD's request for Plaintiffs to release all communications that mention

5    "Felarca," "Antifa," "By All Means Necessary," or "BAMN" has a chilling effect on

6    Plaintiffs' speech, association, and participation in concerted activities for their mutual

7    benefit.

8    93.    BUSD and Judicial Watch have not and cannot provide an interest for their

9    request, let alone a "compelling" one.

10

11              **COUNT THREE: Violation of Right to Privacy**
          **(Fourth Amendment to U.S. Constitution; Article I, Section 1 of California**
12              **Constitution, 42 U.S.C. §1983)**

13    94.    Plaintiffs reallege each and every preceding paragraph in this Complaint as if

      fully set forth here.
14
      95.    The Fourth Amendment to the United States Constitution and Article I, Section 1
15
      of the California Constitution protect the right to privacy.
16
      96.    Teachers and staff at MLKMS have a reasonable expectation of privacy in their e-
17
      mails not being released as public records, particularly those e-mails in which they
18
      discuss confidential matters related to their students, their students' families, and/or
19
      ensure a high quality educational environment and functioning school community in the
20
      face of right-wing intimidation and bullying. Teachers and staff at MLKMS are not
21
      public officials and do not possess any decision-making authority that lessens their
22
      reasonable expectation of privacy. See *New York Times Co. v. Sullivan*, 376 U.S. 254,
23
      270 (1964).
24

97.     No amount of redacting names, email addresses, etc. would protect individual

Plaintiffs from the right-wing trolls who have been determined to identify MLKMS

teachers and staff for harassment and bullying as well as the entire school.

98.     Employees have a privacy interest in their personnel files. The right to privacy in

one's personnel files has been given "forceful recognition in both federal and state

legislation," *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 319, fn. 16 (1979). An

individual's personnel file contains "vast amounts of personal data," including "where he

was born, the names of his parents, where he has lived from time to time, his high school

or other school records, results of examinations, evaluations of his work performance."

*Department of the Air Force v. Rose*, 425 U.S. 352, 269 (1976). Access to personnel files

is "drastically limited… only to supervisory personnel directly involved with the

individual." *Id*.

99.     The CPRA exempts from disclosure "[p]ersonnel, medical, or similar files, the

disclosure of which would constitute an unwarranted invasion of personal privacy." Cal.

Gov't Code §6254(c).

100.    Judicial Watch has provided no justification for converting Felarca's personnel

file into a public record that would override the CPRA's strong presumption of

nondisclosure or CPRA's prohibition of disclosures that violate federal and state law.

**COUNT FOUR: Violation of Educational Employment Relations Act (EERA)**
**(California Government Code §§ 3540 *et seq.*)**
**<u>DEFENDANT B.U.S.D.</u>**

101.    Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth

here.

102.    The Educational Employment Relations Act (EERA) governs collective

VERIFIED FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDAMUS
CASE NO. 3:16-cv-06282-VC                                                          24

bargaining between school districts and their employees. Government Code Section

3543(a) states: "Public school employees shall have the right to form, join, and

participate in the activities of employee organizations of their own choosing for the

purpose of representation on all matters of employer-employee relations" Cal. Govt.

Code § 3543(a).

103.     Employees have the right to use employer computer and email systems for union

organizing and furthering the interests of employees. *Purple Communications Inc.,* 361

NLRB No. 126 (2014). (While NLRB decisions are not binding on public employers,

California's Public Employment Relations Board (PERB), which has jurisdiction over the

state public sector, often adopts NLRB rulings, especially where PERB attempts to

conform legal principles to the realities of evolving technology.)

104.     Plaintiff Felarca, in addition to being an advocate for civil rights and immigrant

rights, advocates for the rights of her union's (BFT's) members and is an elected delegate

to state and national BFT conventions and a member of the BFT's union executive board.

She was a candidate for BFT president in May 2017.

105.     Defendants' extraordinary and unusual compliance with Judicial Watch's

unprecedented request action toward Felarca retaliates against her for her protected

activities and sends a message to other BUSD staff and faculty that engaging in protected

activities will expose them to retaliation.

106.     Further, under labor law "management officials may observe public union activity

without violating the Act so long as those officials do not 'do something out of the

ordinary'… such as increasing its monitoring during an organizational campaign or

focusing its monitoring efforts on protected conduct or union activists." *Id.* at 15.

107.    BUSD's directive to Plaintiffs to produce all communications that mention "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN" and to publish them as "public records" for right-wing organizations to see is out of the ordinary, overly broad, spies on and deters the ability of employees' to express their political opinions and engage in concerted activities, and therefore interferes with Plaintiffs' right to engage in concerted activity.

**COUNT FIVE: Illegal Employer Act to Direct and Control of Employees' Political Activity**
**(California Labor Code §§ 1101,1102)**

108.    California Labor Code §1101 states: "No employer shall make, adoprt or enforce any rule, regulation, policy… [c]ontrolling or directing, or tending to control or direct the political activities or affiliations of employees.

109.    California Labor Code §1101 states: "No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity."

110.    Defendants' actions would chill Plaintiffs' freedom of speech and freedom of association. It not only sends the hostile message that those teachers and staff who engage in political activities like Felarca will also be targeted, terrorized, and witch-hunted; it sends the message that teachers and staff who engage in political activity or share political views of any sort that BUSD and/or a section of the public is hostile to can and will be targeted and victimized.

111.    Defendants' actions constitute control and directing of Plaintiffs' political activities in violation of California labor law.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests the following relief:

1.      Injunctive relief, including but not limited to the following:

       a.      an order enjoining Defendants from releasing as public records MLKMS teachers' and staff's communications because they mention "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN";

       b.      an order enjoining Defendants from demanding and/or requesting that teachers and staff at MLKMS provide BUSD communications to be released as public records because they mention "Felarca," "Antifa," "By All Means Necessary," and/or "BAMN"; and

       c.      an order enjoining Defendants from releasing Felarca's personnel file as a public record.

2.      Such other and further relief as supported by the evidence in this case and as this Court and/or the jury may deem appropriate.


By Plaintiff's Attorneys,
UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND (UEAALDF)

BY:      _/s/ Ronald Cruz_____
Ronald Cruz (State Bar No. 267038)
Shanta Driver (Michigan Bar No. P65007)*
1985 Linden Street
Oakland, California 94607
(510) 875-4463 (Ronald Cruz)
*Appearing *pro hac vice*

Dated: November 20, 2017

1

## <u>VERIFICATION</u>

2       I, YVETTE FELARCA, declare as follows:

3       1.    I am a party in the above-entitled action.

4       2.    I have read the foregoing Complaint and Petition for Writ of Mandate and

5              know its contents. The matters stated therein are true based on my own

6              knowledge.

7       I declare under penalty of perjury under the laws of the State of California that the

8 foregoing is true and correct.

9       Executed in Oakland, California on November 20, 2017.

10

11                                      YVETTE FELARCA

12

13

14

15

16

17

18

19

20

21

22

23

24

VERIFIED FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDAMUS
CASE NO. 3:16-cv-06282-VC